O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTHONY ENCARNACAO, an individual,<br><br>         Plaintiff,<br><br>    v.<br><br>PHASE FORWARD INC., a Delaware corporation et al.,<br><br>         Defendant. | Case CV 11-05090-ODW (PLAx)<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR RECONSIDERATION [47]** |

## I.   INTRODUCTION

Pending before the Court is Plaintiff Anthony Encarnacao's ("Plaintiff") Motion for Reconsideration. (Dkt. No. 47.) On February 7, 2012, the Court granted Defendants Phase Forward, Inc.; D. Ari Buchler; Russell J. Campanello; Christopher Menard; Steven Powell; Steven Rosenberg; and Robert K. Weiler's (collectively "Defendants")[1] Motion to Dismiss. (Dkt. No. 36.) After careful consideration of the papers filed in support of and in opposition to the instant Motion, the Court deems the

---

[1] The Court refers to Buchler, Campanello, Menard, Powell, Rosenberg, and Weiler collectively as the "Individual Defendants."

matter appropriate for decision without oral argument. Fed. R. Civ. P. 78; C.D. Cal. L.R. 7–15. For the reasons discussed below, Plaintiff's Motion **DENIED**.

## II. BACKGROUND

On August 29, 2011, Plaintiff filed a First Amended Complaint alleging, among other things, that Defendants violated the Racketeer Influenced and Corrupt Organization Act ("RICO") and tortiously interfered with the contract between Plaintiff and his employer, Phase Forward. (Dkt. No. 22.) On February 7, 2012, the Court granted Defendants' Motion to Dismiss Plaintiff's RICO and tortious interference with contract claims with prejudice.

On March 5, 2012, Plaintiff filed the instant Motion for Reconsideration. (Dkt. No. 36.) Defendants filed an opposition on March 12, 2012. (Dkt. No. 48.) In essence, Plaintiff contends that the Court failed to consider fully the arguments made in its opposition to Defendants' Motion to Dismiss and that even if Plaintiff's RICO and tortious interference claims were properly subject to dismissal, the Court should have granted Plaintiff leave to amend those claims. The Court disagrees.

## III. LEGAL STANDARD

"Although Rule 59(e) permits a district court to reconsider and amend a previous order, the rule offers an extraordinary remedy, to be used sparingly in the interests of finality and conservation of judicial resources." *Kona Enters., Inc. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000) (internal quotation marks omitted). "[A] motion for reconsideration should not be granted, absent highly unusual circumstances, unless the district court is presented with newly discovered evidence, committed clear error, or if there is an intervening change in the controlling law." *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 880 (9th Cir. 2009) (quoting *389 Orange St. Partners v. Arnold*, 179 F.3d 656, 665 (9th Cir. 1999)). Furthermore, a motion "may not be used to raise arguments or present evidence for the first time when they could reasonably have been raised earlier in the

1 litigation." *Marlyn Nutraceuticals, Inc.*, 571 F.3d at 880 (internal quotation marks
2 omitted).
3 Pursuant to Local Rule 7–18, a motion for reconsideration may be made only
4 on the grounds of

> (a) a material difference in fact or law from that presented to the Court before such decision that in the exercise of reasonable diligence could not have been known to the party moving for reconsideration at the time of such decision, or (b) the emergence of new material facts or a change of law occurring after the time of such decision, or (c) a manifest showing of a failure to consider material facts presented to the Court before such decision. No motion for reconsideration shall in any manner repeat any oral or written argument made in support of or in opposition to the original motion.

## IV. DISCUSSION

Plaintiff's Motion for Reconsideration requests that the Court reconsider its dismissal of Plaintiff's second claim for violation of RICO and fourth claim for tortious interference with contract. The Court considers each in turn.

### A. PLAINTIFF'S CLAIM FOR RICO VIOLATIONS

Plaintiff asserts that the Court committed clear error by dismissing with prejudice Plaintiff's claim for RICO violations. (Mot. 8.) Plaintiff's RICO claim alleges that Defendants fraudulently induced him to remain at Phase Forward by sending him annual email communications containing Compensation Arrangements Defendants never intended to honor and subsequently terminated him and withheld certain deferred compensations. In dismissing this claim with prejudice, the Court noted that Plaintiff could plead no set of facts that could plausibly establish *proximate* causation. (Dkt. No 44, at 6–7.) Nevertheless, Plaintiff urges that the Court erred

3

1  because the Court's Order dismissing Plaintiff's RICO claim cannot be reconciled
2  with the Court's December 8, 2011 Order denying Defendants' Motion to Dismiss for
3  lack of personal jurisdiction, which found that Plaintiff had satisfied the "but for" test
4  for purposes of personal jurisdiction. (Mot. 1 (emphasis added).)

5  "[T]o state a claim under civil RICO, the plaintiff is required to show that a
6  RICO predicate offense *not only* was a *but for* cause of his injury, *but was the*
7  *proximate cause as well.*"  *Hemi Group, LLC v. City of N.Y.*, 130 S. Ct. 983, 989
8  (2010) (internal quotation marks omitted) (emphasis added). "[P]roximate cause . . .
9  requires some direct relation between the injury asserted and the injurious conduct
10 alleged. A link that is too remote, purely contingent, or indirect is insufficient." *Id.*
11 (citation omitted) (internal quotation marks omitted). "When a court evaluates a
12 RICO claim for proximate causation, the central question it must ask is whether the
13 alleged violation *led directly* to the plaintiff's injuries. *Anza v. Ideal Steel Supply*
14 *Corp.*, 547 U.S. 451, 461 (2006) (emphasis added).

15  Plaintiff appears to conflate the concepts of but for and proximate causation. In
16 its February 7, 2012 Order, the Court expressed concern over Plaintiff's ability to
17 establish proximate causation. Plaintiff's Motion for Reconsideration ostensibly
18 recognizes this fact in arguing that the Court's December 8, 2011 Order and
19 February 7, 2012 Order "cannot be reconciled with one another with respect to the
20 issue of *proximate* causation." (Mot. at 1 (emphasis added).) Nevertheless, Plaintiff
21 proceeds to point out portions of the Court's December 8, 2011 Order addressing only
22 *but for* causation. (*Id.* ("'Thus, Plaintiff's claims satisfy the "*but for*" test and "arise
23 out of or result from" Individual Defendants' actions in California.'" (quoting Dkt.
24 No. 35, at 12.)); *id.* at 7 ("The Court's [December 8, 2011] Order denying Defendants'
25 motion to dismiss for lack of jurisdiction directly found that the Individual
26 Defendants' contacts and communications with Plaintiff . . . were the '*but for*' cause
27 of Plaintiff's harm." (emphasis added)).)
28

The Court does not quarrel with Plaintiff's contention that Defendants' alleged misrepresentations were the but for cause of Plaintiff's injury. Rather, the Court remains convinced that Defendants' alleged misrepresentations are not proximately related to Plaintiff's claimed RICO injury. In essence, Plaintiff alleges that multiple email and personal communications induced him to stay with Phase Forward rather than seek other employment. But for these communications, Plaintiff likely would not have entered into subsequent compensation agreements and, consequently, would not have earned the commissions he claims are being withheld. Finally, Plaintiff contends that these annual communications were part of a broader plan to drive up Phase Forward's profits during merger discussions with Oracle and that Defendants intended from the beginning to terminate Plaintiff and withhold his deferred compensation upon consummation of the merger. However, Defendants' communications with Plaintiff—even if the representations contained therein were knowingly false when made—could not have *proximately* caused Phase Forward or Oracle to withhold Plaintiff's deferred commissions; there are simply too many inferential steps necessary to arrive at such a conclusion.

Moreover, Plaintiff emphasizes facts in his Motion that convince the Court that its decision in the February 7, 2012 Order not to extend leave to amend was correct. In April 2010, Oracle acquired Phase Forward and succeeded to all of Phase Forward's rights and liabilities. (FAC ¶ 23.) All of Phase Forward's liabilities include the deferred compensation owed to Plaintiff.[2] Then, as part of the acquisition,

---

[2] In his Motion, Plaintiff complains that the Court made inferences in its February 7, 2012 Order that "were [not] favorable to Plaintiff or supportive of a valid claim." (Mot. 12.) Out of an abundance of caution, the Court reassures Plaintiff that the Court's inferences are not unwarranted. Here, the Court notes that, although Plaintiff never explicitly alleged that Oracle succeeded to Phase Forward's compensation agreements with Plaintiff, Plaintiff did allege that "Oracle acquired the *entirety* of Phase Forward, including its rights *and liabilities*." (FAC ¶ 23 (emphasis added).) If Plaintiff's compensation agreements constituted part of Phase Forward's liabilities, then the *only* logical inference is that they were also acquired by Oracle—because Oracle acquired Phase Forward's liabilities. Of greater relevance, Oracle actually *did* make at least one payment to Plaintiff on the deferred commissions that Phase Forward owed to Plaintiff, as discussed *infra*. (Mot. 4.)

1  Plaintiff's employment with Phase Forward ended, and Plaintiff was subsequently
2  hired by Oracle. (Mot. 7.) Upon the end of Plaintiff's employment with Phase
3  Forward, "Plaintiff was paid for his remaining base salary and accrued vacation."
4  (Mot. 4.) Plaintiff was not paid the deferred commissions. (*Id.*) However, "[o]n
5  October 31, 2009, Oracle made a payment for deferred commissions that Plaintiff had
6  earned while working for Phase Forward." (*Id.*; Decl. Encarnacao ¶ 11.) Thus,
7  Oracle *did* honor the liability owed to Plaintiff that Oracle had inherited from Phase
8  Forward when Oracle succeeded to all of Phase Forward's liabilities, just as Phase
9  Forward's officers had assured Plaintiff. (*See* Mot. 6.)

10  Further, on December 28, 2010, Oracle attempted to change its compensation
11  agreement with Plaintiff to something different than what Phase Forward had
12  previously arranged. (*Id.*) "No agreement regarding commissions was ever reached
13  between Plaintiff and Oracle." (*Id.*) Subsequently, Oracle failed to pay Plaintiff a
14  commission that was due to Plaintiff on January 31, 2011, and consequently Plaintiff
15  quit. (*Id.* at 7–8.) Thus, Plaintiff's disagreement with Oracle over his compensation
16  directly led to Plaintiff's injury, not any communications Plaintiff had with Phase
17  Forward or its officers.

18  Ultimately, Plaintiff's bald allegations that Defendants' communications were
19  both knowingly false and made with the intention that Plaintiff would be terminated
20  and deprived of his deferred commissions multiple years after the communications
21  were made are facially insufficient to state a plausible claim for relief under RICO.
22  Were this sufficient, any aggrieved employee deprived of compensation following
23  termination could state a RICO claim merely by alleging that representations made via
24  email or telephone during the hiring process were false and that the employer
25  harbored the intention to terminate that employee years later and withhold
26  compensation all along. This surely was not RICO's intended purpose. And this case
27  simply is not a RICO case. Accordingly, Plaintiff's Motion with respect to Plaintiff's
28  second claim is **DENIED**.

### B. PLAINTIFF'S CLAIM FOR TORTIOUS INTERFERENCE WITH A CONTRACT

Plaintiff's Motion also asks the Court to depart from its February 7, 2012 Order, thus granting Plaintiff leave to amend his fourth claim for tortious interference with a contract. (Mot. 16–17.) However, Plaintiff neither presents newly discovered evidence, contends that the Court committed clear error, nor argues that there was an intervening change in the controlling law in support of his Motion regarding Plaintiff's fourth claim. (Mot. 15–17.) As such, Plaintiff has failed to meet the requirements for reconsideration. *See Marlyn Nutraceuticals, Inc.*, 571 F.3d at 880; Local Rule 7–18. Nevertheless, the Court proceeds to remark briefly on Plaintiff's arguments.

In *Shoemaker v. Myers*, the California Supreme Court was quite clear: "It is . . . well established that corporate agents and employees acting for and on behalf of a corporation cannot be held liable for inducing a breach of the corporation's contract." 52 Cal. 3d 1, 24 (1990). In *Shoemaker*, a terminated public employee alleged a claim for wrongful interference with a business relationship and wrongful inducement of breach of contract against the officers of the department for which he worked. *Id.* 7–11. Although the court ultimately ruled that as a public employee Shoemaker did not have a contract of employment to be breached, the court unequivocally stated that because the department's officers stood "in the place of the employer" and because the department could not "act except through such agents" there was "no viable inducement of breach of contract or interference with economic advantage that [was] distinguishable from a cause of action for breach of contract." *Id.* at 25.

Despite such unequivocal language used by the court in *Shoemaker*, Plaintiff urges that *Woods v. Fox Broadcasting Sub., Inc.*, 129 Cal. App. 4th 344 (2005), exposes the Individual Defendants to potential liability for interference with Phase Forward's contracts because they were owners of Phase Forward as well. (Mot. 16–17.) There, the court held that a majority shareholder who allegedly interfered with a contract between the corporation it owns and some other entity was not automatically

immune from liability for such interference. *Woods*, 129 Cal. App. 4th at 353. The court also opined that "contract interference claims [can] be stated against owners, officers, and directors of the company whose contract [is] the subject of litigation." *Id.* at 356. According to the opinion, once a contract interference claim is alleged against an owner, officer, or director, the defendant can then "attempt to prove that their conduct was privileged or justified" as a "defense which must be pleaded and proved." *Id.*

Subsequently, the same California Court of Appeal narrowed the scope of *Woods*. *See Mintz v. Blue Cross of Cal.*, 172 Cal. App. 4th 1594 (2009). In *Mintz*, the court reiterated that "it is settled that 'corporate agents and employees acting for and on behalf of a corporation cannot be held liable for inducing a breach of the corporation's contract.'" *Id.* at 1604 (quoting *Shoemaker*, 52 Cal. 3d at 24). There Mintz alleged that Blue Cross was liable for interfering with a contract between Mintz and CalPERS. *Id.* at 1600–01. The court held that a claim for interference with a contract could not be stated against Blue Cross because Blue Cross was an agent of CalPERS. *Id.* at 1604. *Mintz* discussed *Woods* and narrowed its scope, stating, "*Woods* does not stand for the proposition that the agent of a contracting party may be liable for interference with its principal's contract." *Id.* at 1604 n.6.

Plaintiff argues that because the Individual Defendants are not only corporate agents but also shareholders, *Woods* exposes them to potential liability for interference with the contract between Plaintiff and Phase Forward. (Mot. 16.) The Court rejects Plaintiff's argument. *Woods* dealt with a majority shareholder that was not also a corporate agent. In the Court's view, the rule that Plaintiff advocates would moot the rule declared in *Shoemaker* and *Mintz*, as it would be rare today to find corporate officers or directors that did not also hold at least some shares in the company for which they served as officers or directors. If an ownership stake in a company were all it took to expose the company's corporate agents to liability for interference with the corporation's contracts, then a claim for such interference most

likely would lie against those corporate agents whenever the company breached a contract. The Court does not believe this was *Woods*'s intent. Accordingly, the Court **DENIES** Plaintiff's Motion with respect to Plaintiff's fourth claim for tortious interference with a contract.

## V. CONCLUSION

Because Plaintiff fails to establish a material change of facts or law, a manifest showing that the Court failed to consider facts to support his position, or any other "highly unusual circumstances" warranting reconsideration of the Court's February 7, 2012 Order, the Court **DENIES** Plaintiff's Motion for Reconsideration in its entirety.

**IT IS SO ORDERED.**

March 14, 2012

_____
HON. OTIS D. WRIGHT II
UNITED STATES DISTRICT JUDGE